AO 106 (Rev. 04/10) Application for a Search Warrant

FILED

JUL 1 8 2019

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY                                    DEPUTY

# UNITED STATES DISTRICT COURT

### for the
### Southern District of California

In the Matter of the Search of

*(Briefly describe the property to be searched
or identify the person by name and address)*

One (1) Black LG-X220g Cellular Telephone
IMEI: 356241-07-642213-8

)
)
)
)
)

Case No.

19MJ 3031

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the _____ Southern _____ District of _____ California _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| Title 21 U.S.C. 841, 846, 952, 960, & 963 | Distribution of a Controlled Substance, Conspiracy to Distribute a Controlled Substance, Importation of a Controlled Substance, Conspiracy to Import a Controlled Substance |

The application is based on these facts:

See attached affidavit of Special Agent Konrad Daniels

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Konrad Daniels, Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 7/18/19

_____
*Judge's signature*

City and state: San Diego, California

Hon. Karen S. Crawford, United States Magistrate Judge
*Printed name and title*

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

IN THE MATTER OF THE SEARCH OF:         Case Number:

**One Black LG – X220g**              ) AFFIDAVIT OF SPECIAL
**Cell Phone**                        ) AGENT KONRAD DANIELS
**S/N: 706ACBD642213**                ) IN SUPPORT OF SEARCH
**IMEI: 356241-07-642213-8**          ) WARRANT
                                      )
_____       )

### AFFIDAVIT

I, Konrad Daniels, Special Agent with the United States Department of Homeland Security, Homeland Security Investigations, having been duly sworn, depose and state as follows:

### INTRODUCTION

1.      I make this affidavit in support of an application for a search warrant in furtherance of a narcotics smuggling investigation conducted by Special Agents of the Department of Homeland Security, Homeland Security Investigations, for the following target property: one cellular telephone seized on April 12, 2019, from MARCO APOLO ARAMBURO-QUEVEDO ("ARAMBURO-QUEVEDO"), at the Otay Mesa, CA Port of Entry. The cellular telephone is: (1) one Black LG-X220g Cellular Telephone, S/N 706ACBD642213, IMEI Number 356241-07-642213-8 ("**Subject Telephone**").

2.      **Subject Telephone** was seized from ARAMBURO-QUEVEDO when Customs and Border Protection Officers ("CBPOs") encountered ARAMBURO-QUEVEDO at the Otay Mesa, California Port of Entry on April 12, 2019. ARAMBURO-QUEVEDO was the driver and sole occupant of gray 1999 Nissan

1

Frontier pickup truck bearing a Mexico license plate, number AG9561A. Upon inspection of the vehicle, CBPOs discovered 20 packages of cocaine, totaling approximately 24.84 kilograms (54.76 pounds), concealed in the dashboard of the vehicle. I believe that **Subject Telephone** was used by ARAMBURO-QUEVEDO to communicate with co-conspirators during the drug smuggling event. ARAMBURO-QUEVEDO has been charged with importation of a controlled substance (cocaine) in the Southern District of California. Probable cause exists to believe that **Subject Telephone** contains evidence relating to violations of Title 21, United States Code Sections 841, 846, 952, 960, and 963. **Subject Telephone** is currently in HSI possession at 880 Front Street, San Diego, CA 92101.

3.     Based upon my experience and training, and all the facts and opinions set forth in this Affidavit, I believe the item to be searched, as set forth in Attachment B (incorporated herein), will be found in the item to be searched as described in Attachment A (incorporated herein).  A search of **Subject Telephone** may be or lead to: (1) evidence of the existence of drug trafficking in violation of Title 21, United States Code Sections 841, 846, 952, 960, and 963; and (2) property designed or intended for use, or which is or has been used as a means of committing criminal offenses. Because this affidavit is made for the limited purpose of obtaining a search warrant for **Subject Telephone**, it does not contain all the information known by me or other federal agents regarding this investigation, but only contains those facts believed to be necessary to establish probable cause.

## EXPERIENCE AND TRAINING

4.     I am a Special Agent currently employed with the United States Department of Homeland Security, Immigration and Customs Enforcement,

2

Homeland Security Investigations ("HSI"). I have held my current position with HSI since July 2009. Prior to that, beginning on or about March 2003, I served as a United States Border Patrol Agent. I am currently assigned to the HSI RAC Oceanside, California. I graduated from the Federal Law Enforcement Training Center where I have received training in investigating various narcotics-related offenses, including the importation of narcotics and narcotics trafficking. I have had training in the methods used by controlled substance traffickers to import and distribute drugs and to operate detailed distribution networks. My training has also included the use of cellular and digital telephones and other electronic devices used by narcotics traffickers in the normal course of their illicit activities. I have also worked with other agents with extensive experience in narcotics smuggling investigations. I also have experience in obtaining and executing arrest and search warrants.

5.     I have arrested or participated in the arrest of numerous persons for violating federal drug laws. In these cases, I have conducted interviews with the arrested persons and their associates, as well as cooperating individuals and informants. I have conducted surveillance of narcotics smugglers as they conduct their smuggling activity while crossing the border from Mexico into the United States, and while operating inside the United States. I have executed search warrants on cellular phones used by narcotics smugglers in furtherance of their smuggling activities. Through these investigative activities, I have gained a working knowledge and insight into the typical activity of narcotics smugglers, and the structure of their narcotics smuggling networks. I have also gained information as to the normal operational habits of persons who make their living as narcotics smugglers.

3

6. Through the course of my training, investigations, and conversations with other law enforcement personnel, I am aware that it is a common practice for narcotics smugglers to work in concert with other individuals and to do so by utilizing cellular telephones to maintain communications with co-conspirators in order to further their criminal activities. This is particularly true in cases involving distributional quantities of hard narcotics, such as cocaine, heroin, and methamphetamine. Typically, load drivers smuggling narcotics across the border from Mexico into the United States are in telephonic contact with co-conspirators immediately prior to and following the crossing of the load vehicle, at which time they receive instructions on how to cross and where and when to deliver the controlled substances. Narcotics smugglers and their organizations use cellular telephones, in part, because these individuals believe law enforcement is unable to track the originating and destination phone numbers of calls placed to and from cellular telephones.

8. Based upon my training and experience as a Special Agent, and consultations with law enforcement officers experienced in narcotics smuggling investigations, and all the facts and opinions set forth in this affidavit, I submit the following:

a. Drug smugglers will use cellular telephones because they are mobile and they have instant access to telephone calls, text, web, and voice messages;

b. Drug smugglers will use cellular telephones because they are able to actively monitor the progress of their illegal cargo while the conveyance is in transit.

c. Drug smugglers and their accomplices will use cellular

4

telephones because they can easily arrange and/or determine what time their illegal cargo will arrive at predetermined locations;

      d.     Drug smugglers will use cellular telephones to direct drivers to synchronize an exact drop off and/or pick up time of their illegal cargo;

      e.     Drug smugglers will use cellular telephones to notify or warn their accomplices of law enforcement activity to include the presence and posture of marked and unmarked units, as well as the operational status of checkpoints and border crossings; and

      f.     The use of cellular telephones by smugglers tends to generate evidence that is stored on the cellular telephones, including, but not limited to emails, text messages, photographs, audio files, call logs, address book entries, IP addresses, social network data, and location data.

      9.     Subscriber Identity Module ("SIM") Cards also known as subscriber identity modules are smart cards that store data for GSM cellular telephone subscribers. Such data includes user identity, location and phone number, network authorization data, personal security keys, contact lists and stored text messages. Much of the evidence generated by a smuggler's use of a cellular telephone would likely be stored on any SIM Card that has been utilized in connection with that telephone.

      10.     Based upon my training and experience, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I know that cellular/mobile telephones can and often contain electronic records, phone logs and contacts, voice and text communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos,

5

and location data.  This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular/mobile telephone.  Specifically, I know based upon my training, education, and experience investigating these conspiracies that searches of cellular/mobile telephones yields evidence:

      a.   tending to identify attempts to import cocaine or some other controlled substance from Mexico into the United States;

      b.   tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the smuggling of cocaine or some other controlled substance from Mexico into the United States;

      c.   tending to identify co-conspirators, criminal associates, or others involved in smuggling cocaine or some other controlled substance from Mexico into the United States;

      d.   tending to identify travel to or presence at locations involved in the smuggling of cocaine or some other controlled substance from Mexico into the United States, such as stash houses, load houses, or delivery points;

      e.   tending to identify the user of, or persons with control over or access to, the subject telephone; and/or

      f.   tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

    11.   Because this affidavit is being submitted for the limited purpose of establishing probable cause to obtain a search warrant, it does not contain all of the information known to federal agents regarding this investigation.  Instead, it

contains only those facts believed to be necessary to establish probable cause. In addition, information contained in this affidavit is based upon reviews of official reports and records, upon conversations with other HSI Special Agents, and my personal observations and knowledge. When the contents of documents or statements of others are reported herein, they are reported in substance and in part unless otherwise indicated

## FACTS SUPPORTING PROBABLE CAUSE

10.     On April 12, 2019, at approximately 12:33 p.m., ARAMBURO-QUEVEDO applied for admission into the United States from Mexico at the Otay Mesa, California Port of Entry. ARAMBURO-QUEVEDO was the driver and sole of a gray 1999 Nissan Frontier pickup truck bearing a Mexico license plate, number AG9561A ("the vehicle"). United States Customs and Border Protection Offers ("CBPOs") approached ARAMBURO-QUEVEDO's vehicle as part of pre-primary roving operations. When asked what was the purpose of his trip to the United States, ARAMBURO-QUEVEDO stated he was going to buy auto parts and had nothing to declare. The CBPO observed ARAMBURO-QUEVEDO avoid eye contact, and his hands were shaking. CBPO inspected the dashboard of the vehicle and noticed tampering. A Human and Narcotics Detector Dog then screened the vehicle and alerted to the dashboard area of the vehicle. ARAMBURO-QUEVEDO and the vehicle were then sent to secondary inspection for further inspection.

11.     In secondary inspection, CBPOs ran the vehicle through the Z-portal, which showed anomalies in the dashboard area. CBPOs searched the vehicle and found 20 packages in the dashboard area of the vehicle. A randomly selected package was field-tested, and it tested positive for cocaine. The packages

7

collectively weighed approximately 24.84 kilograms (54.76 pounds).

12.     ARAMBURO-QUEVEDO was arrested and charged with violating 21 U.S.C. § 952 & 960, Importation of Controlled Substances.

13.     At the time of ARAMBURO-QUEVEDO's arrest, CBPOs collected **Subject Telephone**, among other personal effects, from ARAMBURO-QUEVEDO.

14.     Based upon my experience and investigation in this case, and others, I believe that ARAMBURO-QUEVEDO, as well as other persons yet unknown, were involved in an on-going conspiracy to import cocaine or some other prohibited narcotics and to distribute those prohibited narcotics within the United States.     Based on my investigation of drug importation and distribution conspiracies, telephone contact with smugglers can begin months or weeks before drugs are loaded in the car and includes coordination on crossing the border to "burn plates" (develop a crossing history or pattern). ARAMBURO-QUEVEDO's border crossing history indicates that he crossed frequently, and his crossings also coordinate with the vehicle at the time of arrest. Specifically, ARAMBURO-QUEVEDO's crossings coordinate with the vehicle every single time from October 4, 2018 until the date of his arrest, April 12, 2019. During that period, ARAMBURO-QUEVEDO crossed in the Nisan pickup truck *34 times*. However, ARAMBURO-QUEVEDO crossed *a total* of 88 times during that same time period. Furthermore, during his post-arrest statement, ARAMBURO-QUEVEDO claimed the Nissan pickup truck was his "boss's vehicle" and that he was instructed to drive it on specific occasions. ARAMBURO-QUEVEDO also claimed he left the vehicle in the United States several times and would return to Mexico on foot. I therefore believe that ARAMBURO-QUEVEDO was crossing

8

this specific vehicle as part of this importation conspiracy, and **Subject Telephone** was likely used in furtherance of the importation conspiracy during this period. Given these facts, I respectfully request permission to search **Subject Telephone** for data beginning on October 1, 2018, up to and including April 12, 2019.

15.     Based on my experience investigating narcotics smugglers, I also believe that ARAMBURO-QUEVEDO may have used **Subject Telephone** to coordinate with co-conspirators regarding the importation and delivery of the cocaine, and to otherwise further this conspiracy both inside and outside the United States. I also know that recent calls made and received, telephone numbers, contact names, electronic mail (email) addresses, appointment dates, text messages, email messages, messages and posts from social networking sites like facebook, pictures and other digital information are stored in the memory of cellular telephones which identify other persons involved in narcotics trafficking activities.

16.     Based upon my experience and training, consultation with other law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I believe that information relevant to the narcotics smuggling activities of ARAMBURO-QUEVEDO and his co-conspirators, such as telephone numbers, made and received calls, contact names, electronic mail (email) addresses, appointment dates, email messages, messages and posts from social networking sites like facebook, pictures and other digital information are stored in the memory of the cellular telephones described herein.

## SEARCH METHODOLOGY

17.     It is not possible to determine, merely by knowing the cellular telephones make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device.

Cellular devices today can be simple cellular telephone and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

18.    Following the issuance of this warrant, I will collect the subject cellular telephone and subject it to analysis. All forensic analysis of the data contained within the telephone and its memory card(s) will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

19.     Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take several weeks. In this case, the trial is set for August 12, 2019. To ensure that the **Subject** Telephone's contents are reviewed and produced in discovery in a timely fashion, the personnel conducting the identification and extraction of data will complete the analysis by **August 8, 2019**, absent further application to this court.

### CONCLUSION

20.     Based on all of the facts and circumstances described above, I believe that probable cause exists to conclude that ARAMBURO-QUEVEDO used **Subject Telephone** to facilitate the offense of importation of a controlled substance. **Subject Telephone** was likely used to facilitate the offenses by transmitting and storing data, which constitutes evidence of a crime, or property designed or intended for use, or which is or has been used as a means of committing criminal offenses of violations of Title 21, United States Code, Sections 841, 843, 952, 960, and 963.

21.     I also believe that probable cause exists to believe that evidence of illegal activity committed by ARAMBURO-QUEVEDO continues to exist on **Subject Telephone**.

22.     Based upon my experience and training, consultation with other agents in narcotics investigations, consultation with other sources of information, and the facts set forth herein, I know that the items to be seized set forth in Attachment B (incorporated herein) are likely to be found in the property to be searched described in Attachment A (incorporated herein). Therefore, I respectfully request that the Court issue a warrant authorizing me or another

federal law enforcement agent specially trained in digital evidence recovery, to search the items described in Attachment A, and seize the items listed in Attachment B.

I swear the foregoing is true and correct to the best of my knowledge and belief.

Konrad Daniels
Special Agent, HSI

Subscribed and sworn to before me this __18th__ day of July, 2019.

Hon. Karen S. Crawford
United States Magistrate Judge

12

## ATTACHMENT A
### PROPERTY TO BE SEARCHED

The following property is to be searched (**Subject Telephone**) in connection with an investigation of violations of Title 21, United States Code, Sections 841, 846, 952, 960 and 963, is described below:

> One (1) Black LG Cellular Telephone
> MODEL: LG-X220g
> IMEI: 356241-07-642213-8
> S/N: 706ACBD642213

**Subject Telephone** is currently in the possession of Homeland Security Investigations, 880 Front Street, San Diego, CA 92101.

## **ATTACHMENT B**

ITEMS TO BE SEIZED

Authorization to search the cellular/mobile telephone described in Attachment A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular/mobile telephone for evidence described below. The seizure and search of the cellular/mobile telephone shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from the cellular/mobile telephone will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of October 1, 2018 to April 12, 2019:

a. tending to indicate efforts to import methamphetamine, cocaine, or some other federally controlled substance from Mexico into the United States;

b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of methamphetamine, cocaine, or some other federally controlled substance from Mexico into the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in importation of methamphetamine, cocaine, or some other federally controlled substance from Mexico into the United States;

d. tending to identify travel to or presence at locations involved in the importation of methamphetamine, cocaine, or some other federally controlled substance  from Mexico into the United States;

e. tending to identify the user of, or persons with control over or access to, the **Subject Telephone**; and/or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above,

which are evidence of violations of Title 21, United States Code, 841, 846, 952, 960, and 963.